UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


KFC CORPORATION and
KFC U.S. PROPERTIES, INC.                                              PLAINTIFFS


v.                                                           NO. 3:11-CV-00674-CRS


DENMAN E. WAGSTAFF,
DONALD STEINKE,
ALYCE J. WAGSTAFF,
FRANCES MCKENNA STEINKE,
PHIL ATTEBERRY, and
WENDELL WAGSTAFF                                                      DEFENDANTS


## MEMORANDUM OPINION

This case is before the court on two motions by the Defendants against the Plaintiffs,

KFC Corporation and KFC U.S. Properties, Inc. (collectively "KFCC"), a motion to dismiss for

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(6) (DN 13), and a motion to

transfer the action to the U.S. District Court for the District of Minnesota ("District of

Minnesota") pursuant to 28 U.S.C. § 1404 or 28 U.S.C. § 1412 (DN 19).

### BACKGROUND

It is undisputed that the Defendants are the owners, officers, and directors of six related

franchisee corporations that operate Kentucky Fried Chicken ("KFC") restaurants in six states—

California, Idaho, Oregon, Alaska, Texas, and Minnesota. KFCC is a Kentucky corporation and

the Defendants' franchisee corporations are all California corporations. The individual

Defendants do not reside in Kentucky.

The Defendants' franchisee corporations defaulted on the original franchise agreements

governing their collective seventy-seven KFC restaurants by failing to pay royalties and

advertising costs they owed KFCC (DN 16). KFCC then terminated them as franchisees. The

default, however, triggered negotiations between the Defendants and KFCC for a Reinstatement Agreement, which would give the Defendants' franchisee corporations an opportunity to sell the restaurants, to sign promissory notes for the outstanding debt they owed KFCC, and to upgrade the restaurants for resale (DN 16). The following list summarizes the subsequent contractual agreements between the parties.

(1) In June 2010, KFCC entered an agreement with the Defendants' franchisee corporations and each individual Defendant—the Prenegotiation and Forbearance Agreement ("Prenegotiation Agreement"). It provided that KFCC would forgo legal proceedings for the breach of the original franchise agreements in order to allow time to negotiate payment of existing obligations and possible reinstatement of the franchise agreements for the purpose of facilitating the sale of the Defendants' seventy-seven KFC restaurants (DN 16).[1] Each of the six individual Defendants signed this agreement personally, while an agent signed on behalf of the franchisee corporations (DN 18 Filed under Seal).[2]

(2) In August 2010, KFCC and the Defendants' franchisee corporations entered into a Reinstatement Agreement and related letter agreements, which required the Defendants to sign Promissory Notes for past-due debts owed to KFCC (DN 16).

(3) In August 2010, KFCC and the Defendants' franchisee corporations signed New Franchise Agreements (DN 16).

(4) In August 2010, the Defendants' franchisee corporations signed Promissory Notes to pay KFCC past-due obligations arising from the franchisee corporations' default.

---

[1] KFC cites *KFC Corporation v. Wagstaff Minnesota Inc.*, 2012 U.S. Dist. LEXIS 372 (D. Minn. Jan. 3, 2012) to summarize the parties' complex contractual relationship.
[2] The individual Defendants signed the agreement on signature lines indicating they were signing individually (DN 18, Filed under Seal).

(5)  In November 2010, the individual Defendants signed personal guaranty agreements for the franchisee corporations. Those agreements guarantied the payment of the Promissory Notes' and other obligations under the prior franchise agreements.[3]

In April 2011, all six of the Defendants' franchisee corporations filed for Chapter 11 bankruptcy in Minnesota (DN 16). KFCC is a creditor in the pending bankruptcy proceeding in Minnesota.

In this action, in Count I, KFCC requests a declaratory judgment that the individual Defendants, as guarantors, are liable to KFCC for the debts that arise out of and relate to the Defendants' KFC restaurant operations, promissory notes, and other contracts with the Defendants. In Count II, KFCC alleges that the Defendants breached their personal guaranties and KFCC requests an award for past-due and future obligations arising from the Defendants' alleged breach. KFCC also requests an award for pre- and post-judgment interest, attorneys' fees, costs, interest, and expenses connected with this action (DN 1).

## DISCUSSION

KFCC's complaint alleges that exercising personal jurisdiction is proper because the Defendants consented to Kentucky jurisdiction in a collection of documents that cross-reference one another and together comprise the contract among the parties. These documents include (1) the Prenegotiation Agreement; (2) the Promissory Notes ("Notes") for past due royalties; and (3)

---

[3] The individual Defendants signed personal guaranties for the franchise corporations' debts and also their obligations under the Franchise Agreements, Promissory Notes, Food Leases, Equipment Leases, and other contracts that relate to or arise from the operation of the corporations' KFC restaurants:

(1)  Four Defendants—Denman Wagstaff, Donald Steinke, Alyce J. Wagstaff, and Francis J. McKenna Wagstaff—signed personal guaranties for the franchisee corporations' franchise agreements and Promissory Notes under D&D Foods in California, and those in Idaho and Oregon.

(2)  Two Defendants—Denman Wagstaff and Alyce J. Wagstaff—signed personal guaranties for the Wagstaff Management franchisee corporation's franchise agreements and Promissory Notes in California.

(3)  Three Defendants—Denman Wagstaff, Phil Atteberry, and Wendell Wagstaff—signed personal guaranties for the franchise agreements and Promissory Notes in Alaska.

(4)  Denman Wagstaff signed a personal guaranty for the franchise agreements and Promissory Note in Minnesota.

(5)  Two Defendants—Denman Wagstaff and Alyce J. Wagstaff— signed personal guaranties for the franchise agreements and Promissory Notes in Texas.

the Defendants' personal guaranties (DN 16). KFCC contends that personal jurisdiction is also proper because the action satisfies Kentucky's long-arm statute (DN 1).

The Defendants' motion to dismiss argues that the individual Defendants did not consent to personal jurisdiction in Kentucky and that personal jurisdiction is not proper under Kentucky's long-arm statute because they were not "transacting business" in Kentucky to satisfy the requirements enumerated in the statute. They also argue that even if they were transacting business under the long-arm statute, exercising personal jurisdiction would violate the Defendants' due process rights because they lack minimum contacts with Kentucky (DN 13).

## STANDARD

The plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). When a district court resolves a motion to dismiss for lack of personal jurisdiction by relying on written submissions and affidavits rather than holding an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing that personal jurisdiction exists to defeat the motion. *Id.*; *Neogen Corp. v. Neo Gen Screening Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Without a hearing, the court must construe the pleadings and affidavits in the light most favorable to the plaintiff, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), and cannot "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Neogen*, 282 F.3d at 887.

## I.  Personal Jurisdiction over the Defendants

### A.  Personal Jurisdiction Based on Consent

We first address the Defendants' motion to dismiss for lack of personal jurisdiction. "A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction through a forum selection clause." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972). Forum selection clauses are *prima facie* valid. *Se. Commc'n Serv. v. Allstate Tower, Inc.*, CIV. A. 408CV-13-M, 2008 WL 1746638, *4 (W.D. Ky. Apr. 14, 2008).

The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). Such a clause contained in an arm's length commercial transaction is presumed to be valid and enforceable. *Id.*; *Allstate*, 2008 WL 1746638 at *4.

The Supreme Court has stated that, in light of present-day commercial realities, a forum selection clause in a commercial contract should control absent a strong showing that it should be set aside. *Zapata*, 407 U.S. at 15. Where the record is devoid of an allegation that the forum selection clause is fundamentally unfair or unreasonable, a defendant has voluntarily submitted itself to personal jurisdiction and venue. *Powerscreen USA, LLC v. S&L Equip., Inc.*, 2008 U.S. Dist. LEXIS 57584, * 22-23 (W.D. Ky. July 29, 2008). A fundamentally unfair or unreasonable forum selection clause may exist where the clauses result from "fraud, undue influence, or overwhelming bargaining power." *Zapata*, 407 U.S. at 12-13.[4]

Under Kentucky law, when determining the parties' intent from the terms of a contract, the "entire context of the agreement" must be taken into account. *Veech v. Deposit Bank of Shelbyville*, 128 S.W.2d 907, 911 (Ky. 1939). "[A]greements in writing, executed at the same time between the same parties and relating to the same subject-matter, will be considered to make one contract for the purpose of determining the meaning of the parties, though the agreements are contained in several instruments, and though they do not bear the same date, nor be absolutely contemporaneous in execution." *Macpherson v. Bacon's Ex'r*, 203 S.W. 744, 746 (Ky. 1918).

Where a plaintiff claims, as KFCC does here, that the guarantor is bound by a forum selection clause in an underlying guaranty agreement, the court "must carefully consider the language of the guaranty alongside the underlying contract" to "determine the intention of the

---

[4] Here, the Defendants do not assert that the forum selection clause is unfair or unreasonable (DNs 13 and 21). Thus, we will not separately address the reasonableness of the clauses within the agreements.

parties while at the same time preserving the integrity of these unique instruments in keeping with Kentucky law." *Fazoli's Franchising Sys., LLC. v. Diwa III, Inc.*, 2008 WL 4525433, *5-6 (E.D. Ky. Sept. 30, 2008) (*citing ABCO-BRAMER, Inc. v. Markel Ins. Co.*, 55 S.W.3d 841, 844 (Ky. Ct. App. 2000) (holding that where an underlying contract is incorporated into a performance bond, the separate bond and underlying contract agreement are read together to determine the intention of the parties as to what and who is covered under the bond)).

At issue in this case is whether the forum selection clause in the Notes and Prenegotiation Agreement should be read with the personal guaranties as one contract between the parties.

KFCC argues that the Notes' and the Prenegotiation Agreement's forum selection clauses evidence the Defendants' consent to personal jurisdiction because the agreements between the parties—the Notes, the Prenegotiation Agreement, and the personal guaranties—are inseparable. KFCC contends that the agreements should be read as one contract and that consent is evident in (1) the Prenegotiation Agreement's forum selection clause that the Defendants' personally signed; (2) the Notes' forum selection clause, which the Defendants' corporate agent signed on behalf of the corporate franchisees;[5] and (3) the personal guaranty agreements—both the guaranties securing the Defendants' debt under the Franchise Agreements, and those securing the Notes—that lack forum selection clauses, but which the Defendants' personally signed (DN 16).

### 1. The Prenegotiation Agreement

Under the Prenegotiation Agreement, each individual Defendant, in his or her personal capacity along with the Defendants' franchisee corporations, consented to personal jurisdiction in Kentucky. KFCC argues that the individual Defendants consented to jurisdiction because the

---

[5] Only Denman Wagstaff signed the Notes—the individual Defendants did not sign them in their individual capacities. Wagstaff is an individual Defendant, but he is also the designated Control Person and authorized agent for the franchisee corporations. He signed the Notes on behalf of all the Defendants' franchisee corporations as their agent, not in his capacity as a Defendant or guarantor (DN 1).

agreement includes the Defendants' individually, along with the franchisee corporations, under

the term "Franchisee" in the preamble. The agreement also specifies that each "Franchisee"

consents to personal jurisdiction in Kentucky "for all purposes," and each individual Defendant

personally signed the agreement.[6] The Prenegotiation agreement states (DN 18):

> This Prenegotiation and Forbearance agreement . . . is entered into among KFC
> Corporation, a Delaware Corporation ("Franchisor"), and Denman Wagstaff,
> Alyce Wagstaff, Wendell Wagstaff, Phil Atteberry, Donald Steinke, Frances J.
> McKenna Steinke, Wagstaff Management Corp., Wagstaff Atte Alaska, Inc.,
> Wagstaff Minnesota, Inc., Wagstaff Texas, Inc., D&D Food Management, Inc.,
> D&D Idaho Food, Inc. (collectively, "Franchisee").
>
> <u>Consent to Personal Jurisdiction in Kentucky</u>. As further consideration for
> Franchisor's agreement to enter into this Agreement, Franchisee consents to the
> non-exclusive jurisdiction of the court in the Commonwealth of Kentucky and
> consents to personal jurisdiction in Kentucky for all purposes.

The Defendants have not challenged the forum selection clause as unreasonable. Instead, the

Defendants' argue that the Prenegotiation Agreement does not evidence the Defendants' consent

because KFCC's claims do not arise from that agreement (DN 21). We agree.

The link between the Prenegotiation Agreement and the Defendants' intent to consent to

personal jurisdiction is weak. The Prenegotiation Agreement was a separate and unique

instrument from the Notes and guaranties, and we will not read its forum selection clause in

combination with the other documents. *Compare, with KFC Corp. v. Wagstaff Minn., Inc.*, 2012

U.S. Dist. LEXIS 372 (D. Minn. Jan. 3, 2012) (evaluating related agreements between the parties

under Kentucky law).

The documents do not make one contract when we take the entire context of the

agreements into account. The purpose of the Prenegotiation Agreement was to formalize

KFCC's agreement to forgo legal proceedings for the franchisee corporations' breach of the

original franchise agreements in order to allow time to negotiate payment of the franchisee

---

[6] The Defendants personally signed the Prenegotiation Agreement—the agreements' signature lines indicate that
they were signing in their individual capacity (DN 18 Filed under Seal).

corporations' existing obligations and possible reinstatement of the franchise agreements for the purpose of facilitating the sale of the seventy-seven KFC restaurants (DN 18). The Prenegotiation Agreement merely allows time for the parties to negotiate, while the Notes and guaranties require payment of past-due and future debts. The documents are not sufficiently related for the court to read all three documents together as one. *See Fazoli's Franchising Sys.,* 2008 WL 4525433 at *5-6.

Also, KFCC's claims against the individual defendants do not arise from the Prenegotiation Agreement. In this action, KFCC seeks repayment of the debts that the individual defendants' owe as guarantors of their corporations' franchise agreements. The Prenegotiation Agreement does not provide for repayment—it merely allows time to negotiate repayment and possible reinstatement—it does not bind either party to pay or accept payment of any debts (DN 18). Thus, when reading the entire context of the documents, the Prenegotiation Agreement was neither related to the same subject matter—repayment—as the other documents, nor was it executed at the same as the other documents. *See Veech*, 128 S.W.2d at 911.

The broad language in the Prenegotiation Agreement's forum selection clause, which states that the Franchisee "consents to personal jurisdiction in Kentucky for all purposes," does not show that the parties intended to consent to jurisdiction under all subsequent contracts. *See Gen. Drivers v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1045 (6th Cir. 1994). The Prenegotiation Agreement does not indicate that the individual defendants' consent to jurisdiction in the Prenegotiation Agreement should be read into the Notes and guaranties. Thus, we will not read the Prenegotiation Agreement as part of one integrated contract between the parties. *See id.*

-8-

### 2. The Promissory Notes and Personal Guaranty Agreements

Following the execution of the Prenegotation Agreement, the Defendants' franchisee corporations entered into Promissory Notes, which the individual Defendants' later personally guaranteed (DN 16). The Notes contain a forum selection clause naming Kentucky as the agreed upon forum, while the guaranties lack a forum selection clause. Thus, the issue is whether the Defendants are bound by the forum selection clause in the Notes in their personal capacity when the Notes obligate only the franchisee corporations, not the individual Defendants.[7]

KFCC contends that the Notes are inseparable from the personal guaranties because the Notes cross-reference the personal guaranties (DN 16). The Notes state (DN 1-5):

> This Note has been issued in connection with the restructuring of Maker's [franchisee corporations'] debt. The obligations of Maker under this Note shall be unconditionally guaranteed by Denman E. Wagstaff, Donald Steinke, Alyce J. Wagstaff, and Frances J. McKenna Steinke (each a "Guarantor" and collectively, the "Guarantors") pursuant to a Guaranty in favor of Payee [KFCC] dated as of the date hereof (the "Guaranty").

> Maker [franchisee corporations] and all endorsers, Guarantors and sureties hereby consent and voluntarily submit to personal jurisdiction in the Commonwealth of Kentucky in and by the court of Kentucky located in Jefferson County, Kentucky and the United States District Court for the Western District of Kentucky in any action … under this Note or any related Guaranty.

This case is similar to three franchisor cases within the Sixth Circuit—cases from the U.S. District Courts for the Eastern Districts of Kentucky and Michigan—*Fazoli's Franchising Sys.*, 2008 WL 4525433 (E.D. Ky. Sept. 30, 2008), *Long John Silver's, Inc. v. Diwa III, Inc.*, 650

---

[7] KFCC argues that the Defendants' consent in the Notes is binding regardless of whether or not this court finds that they are integrated with the guaranties because "forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause." *Hadley v. Shaffer*, 2003 WL 21960406, *12 (D. Del. Aug. 12, 2003). *Hadley* noted that courts from several jurisdictions, including the Third, Seventh, and Ninth Circuits, have held that non-signatory defendants are bound by a forum selection clause when they are closely related to the contract. *Id.* We find this case instructive because the undisputed facts show that the Defendants are closely related to the Franchisee corporations as the owners, shareholders, officers, guarantors, and directors. We agree that the Defendants' guaranties were critical in inducing KFCC to accept the Notes from the franchisees, and we find the argument that the individual Defendants could anticipate being called to a Kentucky court to answer for the franchisee corporations' default compelling (DN 16) *See id.* However, this case is not binding. Under Kentucky law, because the individual Defendants did not sign the Notes, they are not bound by the provisions in the underlying Notes—including the forum selection clause at issue here.

F.Supp.2d 612 (E.D. Ky. 2009), and *Gelato Di Roma Int'l, Inc. v. Gornall*, 2006 WL 2433454 (E.D. Mich. Aug. 22, 2006). In these cases, the courts found that exercising personal jurisdiction over individual guarantors was improper when the individuals had not signed the underlying documents that contained the forum selection clause.[8]

The issue in this case is similar to the issues in *Fazoli's, Gelato Di Roma,* and *Long John Silver's.* Those cases address whether individual guarantors are bound by a forum selection clause in a separate underlying agreement that they did not sign. Under Kentucky law, when individual guarantors do not sign the underlying agreement that contains the forum selection clause, "the Court must be careful to enforce only what Defendants, as guarantors, undertook to do by virtue of their agreements with [the franchisor]." *Fazoli's*, 2008 WL 4525433 at *6 (*cited in Long John Silver's,* 650 F.Supp.2d at 623).

Under certain circumstances, courts have held that guarantors can be bound by a forum selection in an underlying, guaranteed agreement. *See, e.g. Ameritrust Co. Nat'l Ass'n v. Chanslor*; 803 F.Supp. 893, 896 (S.D.N.Y. 1992). In *Ameritrust*, the court held that the guarantor consented to jurisdiction in New York via the guaranty, which stated that that guarantor unconditionally guaranties "the full payment, performance and observation . . . of all agreements" executed in connection with the Notes, when the Notes contain a forum selection clause. *Id.*

---

[8] KFCC cites a related Minnesota case, *KFC Corporation v. Wagstaff Minnesota, Inc.*, 2012 U.S. Dist. LEXIS 372, *6 (D. Minn. Jan. 3, 2012), which involved the parties in this case. In *Wagstaff*, the Minnesota District Court addressed the issue of whether or not to read the reinstatement agreement documents together. However, the issue in this case is distinguishable. The *Wagstaff* court reasoned that the plain language of the reinstatement agreements, the context of the agreements, the reinstatement process between KFCC and the Defendants, and common sense show that the parties intended to form one contract. Thus, the court found that the documents should be read together. *Id.* We do not agree with KFCC's contention that, based on W*agstaff*, the Notes and guaranty agreements are inseparable (DN 16). *Wagstaff* is not persuasive when Kentucky law illustrates that a different analysis is applied to forum selection clauses in Notes and guarantee agreements.

Here, unlike the broad language in *Ameritrust*, the guaranty in this case stated that the guarantors "guarantee to KFCC . . . the full and prompt payment when due, by acceleration or otherwise, of all principal, interest and other amounts due under that certain Promissory Note dated August 13, 2010." (DN 16-2). This language indicates that each individual Defendants' guaranty was limited solely to the Note's obligations regarding payment—not "all agreements" like the *Ameritrust* guaranty. Similarly, the *Gelato Di Roma* court determined that where a party guarantees all "obligations, covenants, representations and warranties of every kind," the language may be considered broad enough to encompass a forum selection clause in an underlying guaranteed Promissory Note. 2006 WL 2433454 at *5. Here, the parties did not agree to guaranty "all obligations." Instead, they guarantied only repayment, which is not the type of broad agreement that evidences the individual Defendants' agreement to be bound by the Note's forum selection clause.

The *Gelato Di Roma* court also found that where the guaranteed Promissory Note contains a choice of law clause and a forum selection clause, but the guaranty only contains a choice of law clause that "it is not as clear that the guarantor undertook to honor the forum selection clause in the Promissory Notes." *Id.* Here, like *Gelato Di Roma*, the Notes included both a forum selection and a choice of law clause, while the guaranty was silent as to the agreed upon forum and contained only a choice of law clause. Thus, whether the guarantors intended to honor the Notes' choice of law clause in this case is unclear.

In accordance with Kentucky law under *Fazoli's*, it is "reasonable to conclude that the parties distinguished between the two documents." 2008 WL 4525433 at *6. In *Fazoli's*, the guaranties were silent as to the appropriate forum for disputes and contain no waiver of objection to jurisdiction in Kentucky, while the Defendants made other waivers regarding suits against

themselves. *Id.* Here, as in *Fazoli's,* the court must be careful to enforce only what the individual Defendants, as guarantors, undertook to do by virtue of their agreement with KFCC. *See id. Fazoli's* identified that the guaranty might have been drafted differently. Here, it could have been drafted to explicitly include a forum selection clause, or to indicate that the individual Defendants were guaranteeing all of the agreements in the Notes to KFCC, not only the payment of "all principle, interest and other amounts due" under the Promissory Note (DN 16-2).

Also, the guaranties were signed by the individual Defendants' corporate franchisee representative on August 13, 2010—almost three months before the individual Defendants guaranteed the Notes. The guarantors were not parties to the underlying Notes in their individual capacity. Accordingly, KFCC's argument is further weakened because the agreements were not executed at the same time, nor were they executed between the same parties. While the two agreements are related to the same subject-matter—repayment—the individual Defendants' guaranteed payment to KFCC only if the franchisee corporations' defaulted on their payment obligations. The individual Defendants' did not agree to perform every undertaking, agreement and covenant in the Notes. Thus, the individual Defendants did not consent to personal jurisdiction simply by virtue of guarantying the Notes. *See Gelato Di Roma*, 2006 WL 2433454 at *5; *compare, with Macpherson v. Bacon's Ex'r*, 203 S.W. 744, 746 (Ky. 1918) (where multiple agreements were considered one contract to determine the meaning of the parties, though they do not bear the same date and were not contemporaneous in execution). Here, the Notes and guaranties cannot be construed as one document.

In sum, it is undisputed that the individual Defendants' are the owners, officers, and directors of the franchisee corporations which are bound by the Notes; that the Notes reference the individual Defendants' personal guaranties; and that the Notes indicate that guarantors

submit to Kentucky jurisdiction. However, the individual Defendants named in this action did not sign the Notes, the Defendants were not parties to the Notes, and the guaranties did not contain a forum selection clause. Thus, the Notes and guaranties are not one indivisible contract, and we will not exercise personal jurisdiction over the individual Defendants who did not consent to such an exercise of jurisdiction. *See Long John Silver's,* 650 F.Supp.2d at 622.

### B.  Jurisdiction Under Kentucky's Long-Arm Statute, KRS § 454.210(2)(a)(1)

To meet the burden of showing a *prima facie* case that personal jurisdiction exists to defeat the motion to dismiss, the plaintiff must "establish[] with reasonable particularity sufficient contacts between the [defendant] and the forum state to support jurisdiction." *Neogen*, 282 F.3d at 887 (*quoting Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). To determine whether personal jurisdiction exists, a federal court applies the law of the forum in which it sits, subject to the requirements of constitutional due process. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).

While courts previously held that Kentucky's long-arm statute, KRS § 454.210, extends to the outer reaches of due process, *see, e.g., Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 689 (W.D. Ky. 2010), the Kentucky Supreme Court has clarified that the statute is not, *per se*, coextensive with the limits of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). Instead, the Kentucky Supreme Court held that a defendant's conduct and activities must fall within one of the nine enumerated provisions in the statute before a Kentucky court may exercise personal jurisdiction over a defendant. *Id.*

Accordingly, to satisfy Kentucky's long-arm statute, a defendant's conduct and activities must fall within one of the nine specific provisions in the statute before a Kentucky court may exercise personal jurisdiction over a defendant. *Caesars*, 336 S.W.3d at 56. The two-step

-13-

analysis under *Caesars Riverboat Casino* requires the court to (1) "proceed under KRS 454.210 to determine if the cause of action "arises from" conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then in personam jurisdiction may not be exercised." The court defined "arising from" to mean that the cause of action must have originated from, or came into being, as a result of the Defendants' "transacting business" in Kentucky. *Id.* at 58. In other words, that "there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Id.* at 59. If the statute is applicable, then (2) "a second step in the analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.* at 57.

Kentucky's long-arm statute authorizes personal jurisdiction over, among others, a person whose actions arise from transacting any business in Kentucky. KRS § 454.210(2)(a)(1). Furthermore, Kentucky has a "manifest interest in providing its residents with a convenient forum for redressing interests inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In order to overcome the many justifications for this exercise of personal jurisdiction, the Defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

In this case, KFCC argues that due process is not offended by this court's exercise of personal jurisdiction over the Defendants pursuant to the statute because the Defendants were transacting business in Kentucky and have availed themselves of multi-year, multi-contract franchise relationships with KFCC. Thus, they argue that the Defendants' "conduct and connection with [Kentucky] are such that they should reasonably anticipate being haled into court" here. *Id*. at 473-74.

-14-

The Defendants argue that jurisdiction under Kentucky's long-arm statute is improper because they did not personally transact business in Kentucky, and because they lack the requisite minimum contacts with Kentucky (DN 1-1). They contend that the mere fact that they signed personal guaranties for obligations owed to a Kentucky corporation does not constitute "transacting business." They also argue that exercising personal jurisdiction over them would violate their due process rights because they lack relevant contacts with Kentucky and never purposefully availed themselves of the benefits of the forum state (DN 13).

### 1.   "Transacting Business" Under KRS § 454.210(2)(a)(1)

On a motion to dismiss for lack of personal jurisdiction, such as this one, which is decided on the pleadings and affidavits, the court must consider "the pleadings and affidavits in the light most favorable to the Plaintiff, and the Plaintiff need only make a *prima facie* showing of jurisdiction to defeat Defendant's motion. *Kerman v. Chenery Assoc., Inc.,* 2007 WL 2363283, *1 (W.D. Ky. Aug. 14, 2007) (*citing Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'n, Int'l, Ltd.*, 381 F.Supp.2d 638, 641 (W.D. Ky. 2005) (*quoting Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

Under KRS § 454.210(2)(a)(1), a court "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's…[t]ransacting any business in this Commonwealth." It is undisputed that the Defendants signed numerous long-term contracts with KFCC, a Kentucky Corporation, which were governed by Kentucky law, and required monthly payments to be sent to KFCC in Kentucky (DN 16). However, KFCC does not contend that any of those long-term contracts were executed in Kentucky. KFCC contends that the Defendants communicated countless times with them regarding the franchise relationship and its obligations, and traveled to Kentucky for KFC franchisee business (DN 16). The Defendants

-15-

contend that the individual Defendants did not personally "transact business," solicit business, or derive revenue from Kentucky to satisfy the long-arm statute (DN 13). Evaluating the claim in the light most favorable to KFCC, we will move on to analyze whether KFCC's claim "arises from" the Defendants transacting business under KRS § 454.210(2)(a)(1).[9]

## 2.   "Arising From" Under KRS § 454.210(2)(a)(1)

This step of the analysis fails because KFCC's cause of action did not "arise from" the Defendants' transaction of business in Kentucky. Under KRS § 454.210(2)(a)(1), for this court to exercise personal jurisdiction over a person who is transacting business in Kentucky, the plaintiff must also show that the claims "arise from" those activities in Kentucky. *Caesars Riverboat Casino*, 336 S.W.3d at 56. KFCC cites *National Can,* in which the Sixth Circuit determined that a Kentucky court could exercise jurisdiction over non-resident guarantors of a franchise. 674 F.2d 1134 (6th Cir. 1982). However, in accordance with *Burger King,* the court did not find jurisdiction over the guarantors simply because they entered into a guaranty agreement with a Kentucky corporation. The court evaluated each guarantor to determine what additional contacts each had with Kentucky that would justify exercising personal jurisdiction in Kentucky.

Central to the court's finding of jurisdiction was the fact that the defendants' franchisee corporation was a Kentucky corporation. *Id.* In *National Can*, the court found personal jurisdiction over three defendants who had substantial contacts in Kentucky. One of whom had

---

[9] With regard to the individual Defendants' roles as shareholders, officers, and managers of their respective franchisee corporations, the court could exercise personal jurisdiction over the individual Defendants even if their contacts with Kentucky were solely as agents of the corporate franchisees, as long as the exercise is consistent with due process. *See Bugher v. Collins*, 2006 WL 2088278, *2 (W.D. Ky. Jul. 24, 2006) (*citing Calder v. Jones*, 465 U.S. 783, 790 (1984)). The Supreme Court has held that an employee's contact with the forum state must not be judged according to the employer's contacts. *Calder*, 465 U.S. at 790. Instead, an employee's contacts must be assessed individually. *Id.* The *Bugher* court found that although a defendant's contacts with Kentucky arose solely out of his employment, his actions constituted purposeful availment of the privilege of acting in Kentucky because he personally conducted business in Kentucky, albeit on behalf of his employer. *Bugher*, 2006 WL 2088278 at *1. Here, the Defendants' corporate franchise contracts with KFCC, which they entered as corporate agents, are not sufficient contacts to satisfy due process.

purchased a home in Kentucky and lived there to serve as the manager of the Kentucky franchise, another traveled to Kentucky once a month to oversee the company, and the third was a shareholder and vice-president of the Kentucky corporation and had been assigned a security interest in the assets of the corporation that was filed in Kentucky. *Id.* at 1137.

Here, although four Defendants in this case—Denman Wagstaff, Donald Steinke, Phil Atteberry, and Wendell Wagstaff—traveled to Kentucky, their infrequent travel was unrelated to the Notes or guaranties at issue here. Their travel was not the type of continuous or benefit producing contact that was present in *National Can*.[10] Although the individual Defendants signed the guaranty agreements, minimum contacts with a forum state cannot be established solely on the basis of a contract between a resident and a non-resident. *Burger King*, 471 U.S. at 478. Other factors, such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties 'actual course of dealing' must be considered." *Id.* at 479. The personal guaranty agreements between the Defendants and KFCC guaranteed Notes between a non-resident entity, the Defendants' corporate franchisees, and KFCC. The KFC franchises were operated outside of Kentucky, and while four Defendants traveled to Kentucky, their travel was not related to the Notes or guaranties at issue here.

The Defendants guaranty agreements with a Kentucky company are not enough. *Burger King*, 471 U.S. at 478. Merely executing personal guaranty agreements outside of Kentucky for

---

[10] Neither Alyce Wagstaff nor Frances Steinke ever traveled to Kentucky for KFC-related business. The other Defendants' travels were unrelated to the Reinstatement, Notes, or guaranty agreements. Denman Wagstaff "traveled to Kentucky for all-franchisee or KFC national committee meetings, but none of these meetings had any specific relationship to the Franchisee or the personal guaranties." (DN 13-2, Wagstaff Aff.); Donald Steinke "traveled to Kentucky only one time in connection with [his] involvement in KFC franchises . . . [which] all KFC franchisees from around the country were invited to attend. The meeting covered general topics such as operations and advertising . . . [and] had no specific relationship to . . . the personal guaranties." (DN 13-3, Steinke Aff.); Phil Atteberry "traveled to Kentucky only once . . . to attend an all-franchisee advertising meeting." The meeting had no relationship to the personal guaranties referenced in the Complaint. (DN 13-6, Atteberry Aff.); Wendell Wagstaff "traveled to Kentucky three times in connection with his involvement with KFC franchises." For a KFC national committee meeting regarding a Score Card Surveys, for a new product and advertising summit, and for an all-franchisee meeting that was unrelated to the Reinstatement, Notes, or guaranties (DN 13-7, Wagstaff Aff.).

restaurants that were not located in Kentucky or owned by Kentucky corporations is not a reasonable and direct nexus between KFCC's claims and the Defendants' business activity in Kentucky. *See Caesars Riverboat Casino*, 223 S.W.3d at 58; *see also Perry v. Cent. Bank & Trust Co.*, 812 S.W.2d 166, 169 (Ky. Ct. App. 1991); *see also Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir. 1982). By signing the personal guaranties the Defendants risked their names and financial worth to aid in the establishment of the franchises. However, unlike *National Can*—where the guaranties helped establish a Kentucky corporation—the franchisee corporations in this case were not Kentucky corporations. The Defendants did not have any property or financial interests in a Kentucky corporation. Because KFCC's claim does not arise from any enumerated provisions in the long-arm statute, this court lacks personal jurisdiction. Therefore, we need not determine whether exercising personal jurisdiction would offend federal due process standards.

## II. Transferring Venue Under 28 U.S.C. § 1412

Although this court lacks personal jurisdiction over the individual Defendants for the reasons stated above, the Defendants' request that we transfer the case to the U.S. District Court for the District of Minnesota under 28 U.S.C. § 1412 or § 1404 (DN 19). Here, without personal jurisdiction, we can either dismiss KFCC's claims or transfer the case to a more suitable court. *Deep v. XAC, LLC*, CIV. A. No.07-8-C, 2007 WL 1308356 (May 2, 2007) (holding that transfer, rather than dismissal, is appropriate when another court is the more convenient place for the trial under § 1404) (*citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

In *Sinochem* the Supreme Court held that a district court may immediately address motions to transfer venue before establishing whether it has jurisdiction over a claim. 549 U.S. at

-18-

425. "In particular, a court need not resolve whether it has authority to adjudicate the cause (subject matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Id.* (regarding transfer when another court is the more appropriate and convenient forum under § 1404) (parentheses in original).

Here, in light of the Defendants' pending bankruptcy proceedings and previous litigation, which involved similar claims between the same parties, in the District Court of Minnesota, we will grant the Defendants' motion to transfer. S*ee RFF Family P'ship, LP v. Wasserman*, No. 1:07 CV 1617, 2010 WL 420014, *5 (N.D. Ohio Jan. 29, 2010) (noting that § 1404 is similar to § 1412, as both turn on the "interest of justice" and the "convenience of the parties").

It is undisputed that each of the six individual Defendants filed Chapter 11 voluntary petitions for bankruptcy with the Bankruptcy Court for the District of Minnesota on April 30, 2011. These petitions were all combined into a single proceeding for the purpose of joint administration on May 5, 2011. Also, KFCC has participated in the Minnesota bankruptcy proceedings, including, *inter alia*, filing a response and memorandum in opposition to the franchisee debtors' motion to reject the Reinstatement Agreements with the Minnesota Bankruptcy Court.[11]

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." A decision to grant or deny a motion to transfer venue under § 1412 is committed to the discretion of the district court. *Phillip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 784 (6th Cir. 1961). Although § 1404 is similar, as it allows transfer for "the convenience of the parties and

---

[11] KFCC also filed a response and memorandum arguing that the Reinstatement Agreements are enforceable against the franchisee debtors and attached proof in its response to the Minnesota Bankruptcy Court (DN 19-1).

witnesses, in the interest of justice," there are notable differences. First, in § 1412, the "interest of justice: and "convenience of the parties" standards are disjunctive and separate, and transfer is appropriate even if only one is met. *RFF Family P'ship*, 2010 WL 420014 at *4. Also, an important difference relevant to the "interest of justice" analysis in § 1412 is that the interests of the bankruptcy estate, as opposed to the other litigants' interest, are paramount. *Id.*

The Defendants' contend that the District Court of Minnesota would serve as a more convenient and reasonable location for resolution of KFCC's claims in light of the ongoing Minnesota bankruptcy proceedings, KFCC's ongoing participation in those proceedings, and the resulting familiarity and convenience of the District Court of Minnesota with the parties, witnesses, facts, issues, documentation, and proof relevant to the KFCC's claims (DN 19-1). Defendants also argue that transferring the case to the District Court of Minnesota serves both the interest of justice and convenience of the parties.[12]

There is a split of authority between the Circuit Courts of Appeal regarding whether § 1412's provisions for transfer of cases "under title 11" applies to cases that are "related to" bankruptcy proceedings—as the term is used in 28 U.S.C. 1334(b)—or whether such cases should be analyzed under § 1404(a)'s general transfer provision. While the Sixth Circuit has not yet adopted a position on the issue, lower courts within the circuit have held that § 1412 governs the transfer of cases that are "related to" bankruptcy proceeding. *Mello v. Hare, Wynn, Newell & Newton, LLP*, No. 3:10-CV-243, 2010 WL 2253535, *3 (M.D. Tenn. May 30, 2010) ("the plain language of § 1412, read in the context of § 1409 and the legislative history of the venue provisions of the bankruptcy code, compel[s] the conclusion that congress [sic] intended § 1412

---

[12] We do not agree with the Defendants' contention that transfer is appropriate under 28 U.S.C. § 1404. The Defendants do not show that " KFCC's claims arise under title 11 and could have been brought in the District of Minnesota initially." (DN 19). Thus, we will not address transfer under § 1404.

to apply to proceedings 'related to' a bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b).");

*RFF Family P'ship,*, 2010 WL 420014 at *5.

The Defendants' contend that transfer under § 1412 is appropriate because KFCC's case is "related to" the Minnesota bankruptcy proceedings presently pending in the Bankruptcy Court for the District of Minnesota. They argue that KFCC's claims are inextricably interwoven with the parties, facts, and issues involved in those proceedings and could have a significant impact on the administration of the franchisee debtors' estates and reorganization plans (DN 19).

### A.  Transferring Venue When Claims are "Related To" a Bankruptcy Proceeding

28 U.S.C. § 1412 provides for transfer of cases or proceedings "under title 11." As we noted above, lower courts in the Sixth Circuit have held that a case falls within the purview of § 1412 if it is "related to" a bankruptcy proceeding as that term is used in § 1334(b). *RFF Family P'ship*, 2010 WL 420014 at *5. The Sixth Circuit explained in *Robinson*, that courts determine whether a case is "related to" bankruptcy proceedings by asking "*whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Robinson v. Mich. Consol. Gas. Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990) (emphasis in original). "[T]he proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. at 583. Further, bankruptcy law is purposefully designed to promote efficient and equitable compromise among all relevant parties in a single proceeding, including, among the creditors vis-à-vis one another. *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir. 2004) ("Equal distribution among creditors

is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive *pro rata* shares of the debtor's property.").

Where the adjudication of a case may subsequently result in indemnification claims by the defendant against a debtor's estate, the case is "related to" that debtor's bankruptcy proceedings and qualifies for transfer under § 1412, given the obvious effects that such indemnification claims would have upon the related bankruptcy estates. *See In re Dow Corning*, 86 F.3d 482, 494 (6th Cir. 1996); *see RFF Family P'ship*, 2010 WL 420014 at *6. The Sixth Circuit reached the same conclusion in the more general context of analyzing whether claims are "related to" bankruptcy proceedings under § 1334(b). In *Dow Corning*, the Sixth Circuit held that claims pending against nondebtors give rise to contingent claims against the debtor which unquestionably could ripen into fixed claims. 86 F.3d 482 (6th Cir. 2004). The likelihood of the debtor being held liable to the nondebtors for contribution and indemnification claims suffices to establish a conceivable impact on the estate in bankruptcy. *Id.*

The individual Defendants cite *Consumer Program Adm'rs, Inc. v. Tejpaul,* No. 07-51015, 2008 WL 5411458 (E.D. Mich. Dec. 4, 2008) to identify that indemnity claims could be brought against them as the guarantors of a Chapter 11 franchisee debtor. Those claims will not simply be a substitution for KFCC's claims against the franchisee debtor (DN 19). In *Consumer Program*, the bankruptcy "spawned multiple lawsuits," and the court noted that "potential lawsuits and litigation in multiple forums will have an impact on the administration of the estate . . . [g]iven the limited resources of the Trustee and possibly the guarantors, it will benefit the administration of the estate to retain jurisdiction over all claims and potential claims . . . so that the litigation proceeds in a coordinated and cost-effective manner." *Id.* at *4 (finding that

"'related to' jurisdiction also exists when the litigation may affect the administration of the chapter 7 estate.").

Here, the Defendants identify that they guaranteed the franchisee debtors' obligations to multiple creditors, to which the franchisee debtors owe tens of millions of dollars (DN 47-1, Decl. by Wagstaff). Because they have limited assets to use to satisfy any obligations arising out of those guarantees, the Defendants argue that any recovery by those creditors against the guarantors would be made subject to a deficiency. The resolution of those claims would affect the bankruptcy estate by reducing the creditors' claims against it. Thus, they argue that the resolution of the guaranty claims should be handled in the Minnesota bankruptcy proceeding, which is already pending (DN 19).

Importantly, neither the possibility of the indemnification claims being brought, nor the debtors' liability for any such claims must be certain and definite—the possibility of such claims renders a case "related to" the debtor's bankruptcy proceeding. *RFF Family P'ship*, 2010 WL 420014 at *6 (*citing Dow Corning*, 86 F.3d at 494.) The Sixth Circuit has also held that the "relate to" analysis under § 1336(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding." *Id.* Therefore, it seems in accord with the Sixth Circuit that for transfer under § 1412, indemnity claims also need not ripen against the debtor in order to serve as a potential basis for "related to" jurisdiction.[13]

Here, the resolution of KFCC's claims—in which KFCC seeks a declaratory judgment that the individual Defendants, as guarantors, are liable to KFCC for their debts related to their

---

[13] KFCC arguments in opposition to the motion to transfer fail (DN 42). Contrary to KFCC's contentions, the Defendants need not have filed proofs of claims for this case to be "related to" the pending bankruptcy. *See Dow Corning*, 86 F.3d at 489 ("In addressing the extent of a district court's bankruptcy jurisdiction…over civil proceedings 'related to' cases under title 11, we start with the premise that the 'emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.").

KFC restaurant operations, promissory notes, and other contracts, and in which KFCC alleges that the Defendants breached their personal guaranties—could conceivably affect the estates and reorganization plans of the Defendants in their capacity as franchisee debtors in the Minnesota bankruptcy proceeding. KFCC's claims are based entirely on the Defendants' guaranties, by which KFCC claims the franchisee debtors are liable to them. Thus, should KFCC succeed in pursuing their claims against the individual Defendants, the Defendants would, in turn, have a right to pursue indemnification claims from the franchisee debtors.[14]

Here, as in *Dow Corning*, the Defendants' potential indemnification claims against the franchisee debtors could ultimately affect the size of the debtors' estates; the length of time the debtors' bankruptcy proceedings will take; and the debtors' ability to resolve their liabilities and complete their reorganization plans. *See Dow Corning*, 86 F.3d at 494.[15] In sum, the possibility of multiple indemnification claims by the Defendants against the franchisee debtors—if the Defendants are found liable to KFCC—along with the effect that such indemnification claims could have on the Minnesota Bankruptcy proceeding and the franchisee debtors' estates and reorganization plans, indicate that this action "relates to" the proceedings of the Bankruptcy Court of the District of Minnesota. Therefore, we will apply § 1412's transfer provisions.

## B.  Transferring Venue Serves the Interest of Justice Under 28 U.S.C. § 1412

Where a case involves title 11, as this case does, for the purposes of transfer under § 1412 the court may transfer the case upon a showing that the transfer will serve the interest of justice,

---

[14] While some of the personal guaranties at issue here purport to require the Defendants to waive their rights to subrogation against the corporate franchisee debtors, such a waiver does not affect the individual Defendants' right to indemnification against the franchisee debtors because rights to subrogation and indemnification are separate and distinct claims (DN 19-15 § 4(c)). *See Allstate Ins. Co. v. Smeltzer*, Case No. 25136, 2011 WL 2175776, *3 (Ohio Ct. App. June, 1, 2011) (explaining that indemnification and subrogation are "distinctly different concepts.").

[15] *Dow Corning* noted that a single possible claim for indemnification would likely not present the same type of threat to a debtor's estate as multiple indemnification claims, such that a single claim might limit finding "related to" jurisdiction. 86 F.3d at 494. However, that limitation is inapplicable here because the Minnesota Bankruptcy proceeding involves several franchisee debtors and this case involves six individual Defendants. Thus, multiple indemnification claims could arise between the parties upon a finding of liability in this case. *See id.*

or, that the transfer will facilitate the convenience of the parties. 28 U.S.C. § 1412. We find *Mello v. Hare, Wynn, Newell & Newton, LLP*, an Ohio District Court Case, instructive here as it explains that district courts within the Sixth Circuit examine seven factors in determining whether a discretionary transfer of venue under § 1412 is in the interest of justice: (1) the "strong presumption" in favor of transfer to the district court where the bankruptcy proceedings are pending; (2) the economics of estate administration; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum. No. 3:10-CV-243, 2010 WL 2253535, *4 (M.D. Tenn. May 30, 2010) .

In this case, application of the factors indicates that transfer to the District Court of Minnesota serves the interest of justice. The first three factors militate toward transfer; factors four, five, and six appear neutral as they neither sway the court one way or the other; and factor seven, the plaintiff's original choice of forum, is not as weighty as applied here when we take into consideration the Defendants' pending Minnesota bankruptcy proceeding.

Here, the first factor is a "strong presumption" in favor of transfer to the District Court of Minnesota because the bankruptcy proceeding is pending in the Bankruptcy Court for the District of Minnesota. The second factor addresses the economics of estate administration in determining whether transfer will serve the interest of justice or "the extent to which the outcome of the case could effect [sic] the administration of the debtors' estate if it is not transferred." *RFF Family P'ship*, 2010 WL 420014 at *8. As we discussed previously, a finding of liability against the Defendants on KFCC's claims could result in numerous indemnification claims by the Defendants against the franchisee debtors, which could have a significant impact on the administration of the franchisee debtors' estates, especially given that the total amount of

liability which KFCC seeks to asses against the Defendants is unknown. Thus, the economics of estate administration also lean towards transferring this case.

The third factor, judicial efficiency, weighs in favor of transfer because the Minnesota court already has before it a large number of the parties and witnesses relevant to this suit by virtue of the Defendants' roles as the franchisee debtors' shareholders, officers, and members of the boards of directors. Also, it is undisputed that the District Court of Minnesota is familiar with the parties, facts, issues, documentation and proof related to KFCC's claims. KFCC admits that the Minnesota court is familiar with the complicated facts by virtue of its reliance on the District Court of Minnesota's findings in *Wagstaff* in summarizing the factual background in this case. 2012 U.S. Dist. LEXIS 372 (D. Minn. Jan. 3, 2012). It seems that requiring the parties to appear before a second venue to present the same facts, witnesses, documentation, and proof to another tribunal would be unnecessarily duplicative.

The fourth, fifth, and sixth factors—the ability to receive a fair trial, the state's interest in having local controversies decided within its borders, and the enforceability of any judgment rendered—do not weigh strongly against transfer of the case to the District Court of Minnesota. KFCC's claims are governed by Kentucky law, which weighs in favor of retaining venue in this court. However, the Defendants guaranties were negotiated and executed by the Defendants' outside of Kentucky, none of the Defendants' or franchisee debtors are registered or licensed to do business in Kentucky, and none of the KFC restaurants at issue are located in Kentucky. Here, the interwoven nature of the Minnesota Bankruptcy proceedings and KFCC's claims weighs in favor of transfer. The fifth factor and sixth factors—the right to a fair trial and the enforceability of the judgment—do not disfavor transfer. In light of the strong presumption favoring transfer to

Minnesota where the bankruptcy is pending, the fourth, fifth, and sixth factors do not disfavor transfer under § 1412.

The seventh factor—the plaintiff's original choice of forum—weighs in favor of retaining venue in this court. However, the plaintiff's choice is "but one factor in the analysis and is not alone dispositive." *Am. Signature Inc. v. Moody's Investors Servs., Inc.*, Case No. 2:09-cv-878, 2010 WL 2667367, *2 (S.D. Ohio July 2, 2010) (discussing the plaintiff's choice of forum as applied in analogous transfer requests under § 1404(a)). Also, where none of the conduct complained of occurred in the plaintiff's chosen forum, that forum is given little weight. *Id.* Here, each of the personal guaranties was negotiated and executed outside of Kentucky. Therefore, we apply less weight to this factor than we might under other circumstances.

In light of all of the factors, we will grant the Defendants' motion to transfer venue to the District Court of Minnesota under 28 U.S.C. § 1412.

A separate order will be entered in accordance with this opinion.

June 19, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

-27-